# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEBORAH A. PIKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:09CV448 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Deborah A. Pike seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on May 27, 2009, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff Pike was born on January 19, 1950, and was 55 years of age on her alleged onset date of disability. She has a high school education. Plaintiff has past relevant work experience as a conveyor feeder/off-bearer at a poultry processing plant. Plaintiff alleges disability as of April 25, 2005, due to bipolar disorder, chronic back pain, tendinitis in hands

and wrists, swelling of legs and ankles, hypothyroidism, high cholesterol, allergies, sinusitis, fractured pelvis, arthritis in hands and back, indigestion and lack of energy.

## The Administrative Proceedings

Plaintiff filed her applications for DIB and SSI on September 28, 2005, alleging disability as of April 25, 2005, due to bipolar disorder, chronic back pain, tendinitis in hands and wrists, swelling of legs and ankles, hypothyroidism, high cholesterol, allergies, sinusitis, fractured pelvis, arthritis in hands and back, indigestion and lack of energy. Her claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on July 3, 2008, and a decision denying benefits was issued on December 23, 2008. Plaintiff filed a request for review, and on May 27, 2009, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff meets the disability insured status requirements of the Social Security Act through December 31, 2010.

2. Plaintiff has not engaged in substantial gainful activity since April 25, 2005, her alleged onset date of disability.

3-4. Plaintiff's fine hand tremor, history of pelvic fracture now healed, obesity and bipolar disorder are severe impairments, but do not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.

5. Plaintiff has the residual functional capacity to perform medium work, but is limited to simple, routine, repetitive tasks and is unable to work at a production rate involving piece work. She is further limited to jobs not requiring extensive personal contact, or only occasional public contact and interaction with coworkers. Plaintiff is also limited to performing no more than gross handling with her dominant hand and is able to write short notes less than occasionally.

6. Plaintiff is not capable of performing her past relevant work.

7-9. Plaintiff was born on January 19, 1950, and was 55 years old on her alleged disability onset date, which is defined as an individual closely approaching advanced age. She has at least a high school education and can communicate in English. Transferability of job skills is not material to the determination of disability because Plaintiff's past relevant work is unskilled.

10. Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 25, 2005, through the date of the decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920 (2010). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. The burden of persuasion is on the claimant through

the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on April 25, 2005, her alleged onset date of disability, and continued to meet them through December 31, 2010. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from severe impairments including fine hand tremor, history of pelvic fracture now healed, obesity and bipolar disorder, but does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

The ALJ continued her evaluation at step four, finding that Plaintiff has the residual functional capacity for medium work, but is limited to simple, routine, repetitive tasks and is unable to work at a production rate involving piece work. She is further limited to jobs not requiring extensive personal contact, or only occasional public contact and interaction with coworkers. Plaintiff is also limited to performing no more than gross handling with her dominant hand and is able to write short notes less than occasionally. She is not, however, capable of performing her past relevant work. The ALJ concluded her evaluation at step five,

finding that considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and she is therefore not disabled.

In this action for judicial review, Plaintiff first argues that the ALJ committed reversible error by failing to give controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Patricia Clark. (Docket No. 11, Pl.'s Br. Supp. Mot. for Summ. J., at 4.) Plaintiff argues that because Dr. Clark is a treating physician, her opinion is entitled to great weight and "may be disregarded only if there is persuasive contradictory evidence." (*Id.* at 3.)

At the outset, the Court notes that Plaintiff's phrasing of the "treating physician rule" is no longer the governing standard to be applied in evaluating the opinions of treating physicians. *See Stroup v. Apfel*, No. 96-1722, 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000)(*per curiam*)("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)(same); *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996)(same); *Winford v. Chater*, 917 F. Supp. 398, 400 (E.D. Va. 1996)(same). The current regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010).  By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.  *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Here, there is substantial evidence to support the ALJ's decision to accord minimal weight to Dr. Clark's opinion.  As noted by the ALJ, Dr. Clark opined, by letter dated November 28, 2005, that *the combination of* a recent pelvic fracture and worsening psychiatric symptoms rendered Plaintiff unable to work.  (Tr. at 206.)  Dr. Clark's opinion, however, is not supported by the medical evidence in the record.[1]

Plaintiff suffered a fractured pelvis during a motor vehicle accident on April 25, 2005. (*See id.* at 151.)  After four days in the hospital, she entered inpatient rehabilitation where she did "fairly well" and was released on May 4, 2005.  (*Id.* 182-83.)  On May 23, 2005, Plaintiff's primary care provider, nurse-practitioner Dorothy G. Efird, reported that following rehabilitation, Plaintiff was doing "extremely well," although she continued to have severe night-time pain. (*Id.* at 293.)  Plaintiff reported that her bi-polar medication had been adjusted during her hospitalization, but that she felt she was doing fine.  (*Id.*)

---

[1] With regard to Plaintiff's psychological condition standing alone, there is substantial evidence in the record that conflicts with Dr. Clark's opinion of severity.  (Tr. at 219-21, 227-20, 232-26, 239-40, 325-27, and 340-52.)

-7-

The following month Plaintiff reported only intermittent pain and that she "hardly uses" her cane. (*Id.* at 291.) X-rays in July 2005 showed that Plaintiff's fractures were healing and Plaintiff was permitted to discontinue use of her cane and to begin driving. (*Id.* at 289.) By August 22, 2005, the healing of her fracture was "near complete." (*See id.* at 188-93.) Dr. Clark opined that Plaintiff's bipolar disorder, *combined with* her pelvic fracture, rendered her unable to work. The medical evidence on the whole, however, supports the ALJ's finding that Plaintiff's fracture healed within four months, and therefore, that Dr. Clark's opinion of disability was inconsistent with important evidence.

Plaintiff also argues that the ALJ committed reversible error by failing to discuss her ongoing complaints of pain and swelling in her lower extremities. (Docket No. 11 at 5-6.) Plaintiff testified that she continues to have pain and swelling in her legs, primarily when she walks a lot. (Tr. at 445.) She further testified that doctors recommended that she elevate her legs to help relieve her symptoms. (*Id.* at 447.) The medical record shows that in September 2005, Plaintiff reported pain and swelling in both legs (*id.* at 286), but by October, her swelling had improved and her pain was gone. (*Id.* at 274.) In November, Nurse Efird described Plaintiff's edema as "totally resolved." (*Id.* at 272.) Plaintiff again complained of pain and swelling in her left leg in December, but in January 2006, Plaintiff reported that within a few days, it had resolved without treatment. (*Id.* at 267.) Plaintiff intermittently complained of pain and swelling in her legs, primarily on the left, but her symptoms were successfully treated with support hose and a low sodium diet. (*See id.* at 385, 388, 392, 395,

400.) By December 2006, Nurse Efird reported no edema upon examination and described the problem as essentially resolved. (*Id.* at 392.)

Plaintiff is correct that the ALJ neglected to specifically discuss Plaintiff's edema and subjective complaints of pain. It is also correct that the Commissioner has a duty to "present us with findings and determinations sufficiently articulated to permit meaningful judicial review" *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). The reviewing court requires the factfinder "to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

The ALJ, however, is not required to discuss every finding in every medical report. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)("[T]he ALJ need not evaluate in writing every piece of testimony and evidence submitted. What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'")(citations omitted); *Wyatt v. Bowen*, No. 89-2943, 1989 WL 117940 at * 4 (4th Cir. Sept. 11, 1989)("[T]he duty of explanation will be satisfied when the ALJ presents 'us with findings and determinations sufficiently articulated to permit meaningful judicial review'.")(unpublished opinion)(citations omitted).

Based on its review of the decision, the Court finds that although the ALJ did not explicitly address Plaintiff's subjective complaints, she specifically considered the medical

records of physicians and medical professionals who did discuss her symptoms. None of the medical opinions or treatment records identify Plaintiff's intermittent pain and edema as significantly contributing to her physical limitations. Thus, any error on the ALJ's part in failing to discuss the symptoms in question is harmless. "Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture." *Kurzon v. United States Postal Service*, 539 F.2d 788, 796 (1st Cir. 1976)(internal citations omitted). This doctrine furthers the interest of judicial economy: "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (citing *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981)).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 10) be denied, that the Commissioner's motion for judgment n the pleadings (Docket No. 15) be granted, and that judgement be entered in favor of the Commissioner.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: January 3, 2011